### GREEN *v.* THE STATE.

A confession or criminating admission made by a person in jail to the sheriff and another, the latter of whom had arrested him and brought him to prison on another charge, and who expected a reward in case of a conviction on the charge now in question, is not admissible in evidence where it was induced by a remark made to the prisoner by such third person in the presence of the sheriff in these terms: "Edmund, if you know anything, it may be best for you to tell it," or, "Edmund, if you know anything, go and tell it, and it may be best for you." The evidence having been received before this inducement appeared, it having been brought out on cross-examination of the State's witnesses, a motion then made to withdraw and exclude it from the jury should have been granted.

December 28, 1891.

Criminal law. Evidence. Confessions. Before Judge GOBER. Fannin superior court. May term, 1891.

Edmund and Ansil Green and two others were indicted for the murder of Keener. Edmund and Ansil were put upon trial; both were found guilty, the jury recommending that Ansil be imprisoned for life. Edmund moved for a new trial; his motion was overruled, and he excepted. One ground of the motion was, that the court erred in not ruling out the testimony of Wilson and Arp as to the confession of Edmund Green, on motion of the defendant on the ground that the confession was not freely and voluntarily made. This testimony was as follows: Wilson was sheriff. Higdon and Arp brought Edmund Green and put him in jail. Wilson had a conversation with him in jail in the presence of Arp. Edmund sent for Wilson to come to the jail, and he went. He asked Edmund what he wanted to see him about, and Edmund replied he wanted to talk a little with him concerning some things, but did

not say what.  He did not then talk with Wilson, who told him he (Wilson) was going to start the next day to Marietta, having orders from the judge to carry Edmund there.  Wilson went back, and Edmund said: "I suppose I am charged with being in the crowd that killed Mr. Keener."  Witness replied he had heard that but knew nothing about it.  Arp said, "Now, Edmund, you understand if you tell the sheriff anything you do it voluntarily."  Wilson said, of course; it was nothing to him; he was just doing his duty.  Edmund then told him and Arp that he saw Keener shot from a clay road when they fixed a blind.  He said there were four in the crowd, himself, Ansil and two Carters; that Ansil and the two Carters did the shooting; that four guns were fired; that Ansil shot the big bored gun; that Keener went off holloing; that the boys went off down there; that there were some dogs barking; that he heard some holloing and some more guns fire; that the boys came back to where he was and said, "We have done him up; he is done up."  Wilson told him, if he told about this killing it was voluntary with himself; did not tell him he had better tell on those fellows and get out himself.  This witness was asked if he and Arp did not tell Edmund, if he made this acknowledgment it would be better for him, and replied that Arp said, "Edmund, if you know anything, it may be best for you to tell it."  Arp testified: He brought Edmund to Morganton (the county site where he was tried) and had a conversation with him in the jail about the killing.  "He said Ansil Green, Jake Carter and Robert Carter were with him at the time Keener was killed.  He said four shots were fired the first volley, that Keener ran off holloing, and the other three followed him; he heard more shooting; they then came back and said they had done him up.  He said nothing about the killing until we passed Cleveland; on the way back he became uneasy

and said the kuklux would take him and kill him, and begged us not to let them take him. Me and Geo. Wilson talked with him here in jail; my recollection is that Green said, 'Now, men, I want you to understand I am not hired and I am not scared, and I tell you this with my own free will and accord,' and my recollection is I told him 'it might be the best for you to tell it.'" Question: After you said that, he then told you? Answer, "Yes, sir, he was talking along."

W. T. DAY and M. J. JERMAN, for plaintiff in error.

W. A. LITTLE, attorney-general, and GEO. R. BROWN, solicitor-general, *contra.*

LUMPKIN, Justice.

A careful and laborious examination of a large number of text-books and decisions touching the admissibility of confessions in evidence in criminal cases, shows that the authorities are in considerable conflict, and that it is difficult to draw a precise line between confessions which should be received and those which should be rejected. The tendency of modern judicial opinion is to refuse to admit them when there is any reasonable ground to believe that they were induced by hope or fear. Precisely what words or conduct will constitute such inducement is not easily determined, and differences of opinion concerning the effect and meaning of many expressions, varying in language but more or less similar in import, have given rise to the conflict mentioned. We do not think it would be profitable now to review and discuss these authorities, either with the view of attempting to harmonize them, or of deducing from them a rule which could be applied to all cases. We shall content ourselves, in this case, with announcing our purpose to adhere closely to the plain mandates of our own statute as expressed in §§3792 and 3793 of the code, and with putting the seal of our

condemnation upon the practice too much indulged in by officers and *quasi* officers, such as detectives, in extorting or otherwise improperly obtaining confessions from prisoners in their custody. It is a gross and inexcusable abuse of authority, on the part of men occupying official positions or assuming to act officially, to thus take advantage of the helplessness or ignorance of persons charged with crime, who are to a greater or less extent under their control or in their power, and we deem it our duty to thus rebuke such conduct in unmistakable terms.

In the cases of *Rafe* v. *The State*, 20 *Ga.* 60, and *Valentine* v. *The State*, 77 *Ga.* 470, this court went as far as any court should ever go in sanctioning the admission of confessions made under the circumstances therein shown. In the former, Judge McDONALD expressly disapproved of the manner in which they were obtained, and in the latter, the point was not really before this court as to whether or not the court below properly admitted them. An examination of these cases will show that neither of them is in all respects like the case at bar. In all of them, perhaps, the real object of the conversations had with the prisoners was to obtain confessions of guilt, rather than to ascertain the truth, whatever it might be. Of this there can be no doubt in the case before us, and besides, the person accompanying the sheriff and leading in the conversation had a pecuniary interest in the prisoner's conviction, of which the sheriff was aware, and he lent his presence and assistance to the accomplishment of the other's purpose in obtaining a confession. Under these circumstances, we cannot believe that the criminating admissions made by the prisoner, following the expressions used to him as stated in the head-note, were " made voluntarily, without being induced by another, by the slightest hope of benefit or the remotest fear of injury." Indeed, it is

difficult to conceive how the words spoken to him could, under any circumstances, do otherwise than create the impression or belief that if he confessed, it would secure him a benefit of some kind.  The error in refusing to rule out the evidence specified would require the granting of a new trial, irrespective of the question whether or not the testimony of the accomplice was sufficiently corroborative to authorize a conviction.

*Judgment reversed.*