## 8420. WILSON v. THE STATE.

1. Section 513 of the Penal Code (1910), which provides a penalty for wrecking or attempting to wreck "a railroad train, locomotive, car, coach, or vehicle of any kind, when used or run on any railroad-track for the purpose of travel or transportation," includes cars of a street-railroad operated by electric power, as well as cars of a railroad operated by steam power.

2. On the trial of one charged with the offense of wrecking a street-car by the use of dynamite, it was competent to prove the fact of injury to a passenger thereon. The nature and character of the injury was relevant for the purpose of illustrating the character of the explosive used.

3. Upon the trial of a criminal case the presiding judge may ask of a witness under examination any proper question in a proper manner. If the question be pertinent, but the response disclose irrelevant and immaterial testimony, counsel should move the court, to exclude the answer.

4. A statement of an officer to one accused of crime, to the effect that it would be better for him to tell the truth about the case, does not necessarily, as a matter of law, render inadmissible as evidence a confession of guilt, made in the circumstances disclosed by the present record. With reference to confession evidence, what the law altogether abhors is the testimonial untrustworthiness of the confession. If the inducement is sufficient by possibility to elicit an untrue confession of guilt, then the confession is to be rejected; otherwise it is to be admitted under proper instructions from the court.

5. The evidence was sufficient to warrant the verdict of guilty, and the court did not err. in overruling the motion for new trial.

DECIDED APRIL 24, 1917.   .

Indictment for wrecking car; from Fulton superior court—Judge Hill. December 8, 1916.

*C. P. & Ernest G. Bentley, F. A. Hooper,* for plaintiff in error.
*John A. Boykin, solicitor-general, E. A. Stephens,* contra.    •

GEORGE, J. 1. The plaintiff in error was indicted under § 513 of the Penal Code (1910). Omitting formal parts, the indictment is as follows: "Said accused, in the county of Fulton and State of Georgia, on the 7th day of November, 1916, . . , with force and arms, did, by the device, use, and employment of dynamite, wreck and attempt to wreck a street-railroad car and coach of the Georgia Railway and Power Company, a corporation, said car and coach being then and there used and run on and upon the railroad tracks of the said Georgia Railway and Power Company in Fulton county, Georgia, for the purpose of travel and transportation." It is contended that the act of October 12, 1885 (Acts of 1884-5, p. 131), from which § 513 of the Penal Code was taken, does not apply to the dynamiting of a street-car, but refers only to such railroads as were used for travel in this State in 1885, and since no electric railroads were then in operation in this State, electric railroads were not in contemplation of the legislature at the time of the passage of the act. So much of this section of the code as is relevant to the question here raised is as follows: "Any person who shall, by any device whatever, wreck, or attempt to wreck, a railroad train, locomotive, car, coach or vehicle of any kind when used or run on any railroad-track for the purpose of travel or transportation, or assist or advise it to be done, shall be punished with confinement in the penitentiary for life, unless the jury trying the case shall recommend the prisoner to mercy." The precise question here raised has not been determined by the Court of Appeals

or the Supreme Court of this State. Section 522 of the Penal Code (1910) is as follows: "If any person shall wilfully and maliciously destroy, or in any manner injure or obstruct, or shall wilfully and maliciously cause, or aid and assist, or counsel or advise any other person to destroy, or in any manner to injure or obstruct, any railroad or branch thereof, or any bridge connected therewith, or any vehicle, edifice, right, or privilege granted by charter, and constructed for use under authority thereof; or if an unauthorized person shall turn, move, or in any manner interfere with any gate, switch, sideling, or other appurtenances to any such railroad, he shall be imprisoned in the penitentiary not less than four nor longer than eight years." By comparison, it will be noted that the section last quoted has direct reference to the track of a railroad company, and by its express terms refers only to railroads; while § 513, under which the plaintiff in error was indicted, refers to the rolling stock used for the purpose of travel or transportation upon the tracks of a railroad company. The statute from which § 522 was taken was enacted in 1837, and in *Price* v. *State,* 74 *Ga.* 378, it was held to apply to a street-railroad operated by horse-power, though no such species of railroad existed when the act was passed. If that statute applies to a street-railroad operated by horse-power, although no such railroad was in existence when the act was passed, it would seem to follow that § 513, providing a penalty for wrecking cars operated upon a railroad for the purpose of travel and transportation, applies to cars operated on a street-railroad by electricity, whether electric-cars were in operation in this State at the time of the passage of the act of 1885 embodied in this section or not. Moreover, while electricity may not have been in actual use in this State as a motive power for cars on street-railroads before the passage of this act, its use for this purpose had been expressly authorized by legislative charter in this State (see acts of Dec. 12 and Dec. 24, 1884, Acts 1884-5, pp. 191, 194), and electric street-railroads were in operation in other parts of this country. The provisions of the Civil Code respecting the right to recover of a railroad company for negligent injury to, or negligent homicide of, passengers, employees, and other persons, have generally been held to apply to street-railways, whether operated by horse power, electric power, or steam power. *Savannah &c. Railway* v. *Williams,* 117 *Ga.* 414 (43

S. E. 751, 61 L. R. A. 249), and cit.  If in the act of 1885 the leg-islature used language broad enough to include street-cars propelled by electricity, and if such cars were within the spirit of the act, the courts have no right to restrict the meaning of the act and say that it does not apply to street-cars, whether operated by horse, steam, or electric power.  The word "railroad" in the act of 1885 was generic, as it is now, and broad enough to take in the new species as they arise from time to time.  Moreover the legislature knew, and, it must be presumed, was satisfied with, the construc-tion placed upon the meaning of the word "railroad" by the Supreme Court of this State, and was willing· to re-enact this section in the codes of 1895 and 1910 in the light of the express or implied definition of the word "railroad" as contained in the section.  No sufficient reason occurs to us, nor has any been ad-vanced by able counsel, why the provisions of § 513 do not apply as well to a car propelled by electric power and used for the trans-portation of travelers as to a car propelled by steam power.

2.  The court allowed a witness for the State, over the objec-tion that the testimony was illegal and irrelevant, to testify as follows: "I was hurt when the explosion occurred on November 7th on North Boulevard.  I was a passenger on that car.  My head was cut by some glass from the window, and it made it bleed a lit-tle, and my sister was sitting next to me and she had her ankle sprained and bruised.  We were blown up, etc.  Mr. Porter was sitting in front of us and he was hurt."  Porter testified as fol-lows: "The doctor says my ankle was not broken, but was severely bruised.  I have been using these crutches continually ever since, and it will be some time yet before I can go without them."  The same objection was urged to his evidence.  In *Hobbs* v. *State,* 8 *Ga. App.* 53 (68 S. E. 515), a distinction is made between § 513 and § 522 of the Penal Code, on the ground that § 513 applies to wrecking and attempting to wreck cars, and § 522 to obstructing the track of a railroad company.  It has also been held that the in-tent to wreck a car must be proved, in order to establish an at-tempt to wreck.  See *Nowell* v. *State,* 94 *Ga.* 588 (21 S. E. 591). The burden was therefore on the State to show that it was the de-fendant's intention to wreck the car rather than obstruct the track. The direct result of his act was both relevant and material. · In-jury to passengers may be regarded as a part of the res gestæ of

the wrecking of the car. The evidence of injury to passengers bore directly upon the material questions involved in the case. The defendant, inferentially at least, attempted to show that the car was not wrecked by means of dynamite, as alleged in the indictment. The effect of the explosion upon the car, including the effect upon the passengers riding therein, is of some relevancy in the case. The character of the injuries may be relevant as illustrating the kind of explosive used, or whether any explosive was used. On this point it would have been more satisfactory if the court had eliminated the evidence with regard to the probable duration of the injuries inflicted upon the passenger, Porter, sworn upon the trial of the case. There was no motion to exclude this particular evidence alone. We can not say that the evidence admitted in the instant case was wholly irrelevant and immaterial; if relevant and material, the fact that it may have affected the defendant injuriously is no ground for its exclusion. The facts against the defendant in any case may be decidedly damaging to him, but if relevant or material, they are admissible in evidence. See on this point the opinion in *Gunter* v. *State*, a companion case, post, 772.

3. During the trial the court asked a witness for the State what the defendant was doing when arrested,—whether or not he was on duty. The witness answered that the defendant was formerly an employee of the Georgia Railway and Power Company, but at the time of his arrest was not on duty, and was one of the strikers. It is insisted that this question was improper, because illegal, irrelevant, and harmful to the defendant. No objection to the answer was urged at the trial, nor indeed did counsel for the defendant object to the question itself. The court has the right to ask of a witness a proper question. *Murphy* v. *State,* 13 *Ga. App.* 431 (79 S. E. 228). If the question propounded by the court was objectionable for any reason, we are able to understand why counsel for the accused might hesitate to urge the objection. However, we think it the duty of counsel to object to any improper question, whether propounded by court or counsel, and certainly it is both proper and necessary to move the court to exclude the answer of the witness if the answer is for any legal reason objectionable. In the present case the fact that the defendant was on a strike at the time of his arrest runs throughout the record.

Neither the question by the court nor the answer of the witness injected any new fact into the case.

4. On the trial of the case the court admitted in evidence a written confession of the accused. The confession appears to have been obtained by Waggoner, a detective. On cross-examination this witness admitted that, just before the making of the confession, he advised the accused that "it would be better for him to tell the truth about the case." On this point his testimony, as it appears in the brief, is as follows: "As to my advising him it would be better for him to tell the truth, I would advise anybody to tell the truth. I advised him to tell the truth, that is true,—told him it would be better to tell the truth about it." In submitting the case to the jury the court charged as follows: "It don't render it [the confession] inadmissible for the officer to tell him it is best for him to tell the truth about the case." This charge was given, according to a note by the judge, because counsel for the accused had argued to the jury that the statement made by Waggoner to the defendant that "it would be better for him to tell the truth about the case," rendered the confession inadmissible in evidence. The charge from which the excerpt quoted above is taken is as follows: "A confession has been introduced; it is alleged by the State that he confessed the crime. Confessions are not favored in law. They are received with great caution and must be scanned with great care; and confessions, to be admissible at all, must be freely and voluntarily made,—that is, they must not have been induced by the slightest hope of benefit or remotest fear of injury. It doesn't make a confession inadmissible if an officer has entrapped a party into making it by anything short of hope of benefit or fear of punishment. If by his skill and finesse he entraps a man into making a confession, it don't render it inadmissible. It may go to its weight, but it don't render it inadmissible. It don't render it inadmissible for the officer to tell him it is best for him to tell the truth about the case. A confession freely and voluntarily made is evidence to be considered by the jury along with the other evidence, in determining the question whether or not a man is guilty. . . If he was induced to make the confession by hope of benefit or by fear of punishment, you should not pay any attention to the confession; you would not accept it at all; but the mere statement that he was entrapped into making

it, that there was a 'frame up' on him, would not be sufficient, unless you think that he was induced to make it by the hope of benefit held out to him by some one having authority, or by fear of punishment."

It was insisted that the evidence of the confession should have been excluded in view of the statement made by Waggoner to the accused, and it was likewise insisted that the instruction of the court quoted above was an incorrect statement of the law, and that the jury were thereby authorized to consider a confession which, under the law, should have been excluded from their consideration. The ruling in the case of *Green* v. *State*, 88 *Ga.* 516 (15 S. E. 10, 30 Am. St. R. 167), was cited as controlling upon the question here made. There a confession of guilt was made by the accused while in jail to the sheriff and another, under circumstances very similar to those in the case at bar. The following statement was made by the third person to Green in the presence of the officer: "Edmund, if you know anything, it may be best for you to tell it," or "Edmund, if you know anything, go and tell it, and it may be best for you." It was there ruled that the confession was inadmissible. In *Dixon* v. *State*, 113 *Ga.* 1039 (39 S. E. 846), the Supreme Court cited approvingly the decision in the *Green* case, supra, and held that any advice to a person under arrest, by the officer having him in custody, to the effect that, if he knows anything, he had better tell it, vitiates a confession induced thereby. In *Smith* v. *State*, 125 *Ga.* 252 (54 S. E. 190), a confession was held to be inadmissible because induced by the advice of an employee of the prosecutor that it would be best for the accused to go to the prosecutor and plead guilty, if he was guilty, and that it would be lighter on him. In *Stafford* v. *State*, 55 *Ga.* 591 (3), evidence of a confession was held to be admissible. It there appeared that the defendant confessed to a fellow prisoner who was grossly irreligious, but who read the Bible and sang psalms to the defendant, and told him that if he was guilty he had better confess and seek his God. In *Miller* v. *State*, 94 *Ga.* 1 (21 S. E. 128), it appears that a fellow prisoner asked the accused, who was charged with murder, about the killing, and told him he had "better tell the truth, the white folks were going to break somebody's neck." There the confession was admitted. In the opinion by Justice Simmons it is recognized that in this State it is not neces-

sary, in order to exclude a confession induced through hope or fear, that the inducement should have proceeded from a person in authority; but the fact that the confession in that case was made to a fellow prisoner undoubtedly influenced the court in the conclusion reached. The opinion in that case clearly recognizes the true rule upon which confessions are rejected.

Practically all the authorities agree that in determining whether there was an inducement which would render the confession inadmissible, the only proper question is whether the inducement held out to the prisoner tended to make his confession an untrue one. The exclusion of confession evidence rests on the connection with the inducement; the inducement and the confession stand to each other in the relation of cause and effect. The object of every legal investigation is to ascertain the truth. Testimonial worthlessness is the underlying and fundamental principle on which confession evidence is, under certain circumstances, rejected. If the court could know in a given case that a confession was true, it is clear that the evidence thereof should not be rejected. The wrong done, however reprehensible, in inducing the accused to make a confession, could never, rightly considered, require a rejection of the confession, if the court could know as a fact that the confession was the truth of the case. The underlying principle is that the only confession that can be excluded is the false confession. Human nature is such (however we may theorize upon it), and experience demonstrates, that a man under promise of relief will choose often to make a false confession as to the speediest way to his freedom. Likewise, under the pressure of a threat, he will confess as the speediest way out of injury, actual or probable. Since this is well-nigh universally true, there is, generally speaking, no certainty of obtaining the only element that is of value, to wit, trustworthy information or testimony through confession evidence. It is for precisely this reason that the courts have from the beginning refused evidence of a confession if it appear that the alleged confession was an involuntary one,—that is, induced by fear or hope. This regard for the weakness of humanity and the strong probability that one accused of crime may be induced to say that which is not true, through hope of benefit or fear of punishment, accounts for the existence of the strict rule stated in § 1032 of our Penal Code—"To make a confession admissible, it

must have been made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury." This statute, however, is not a fresh particle dropped into the theretofore existing body of the law, but it is to be regarded as a rule deducible from the common law, and from many decisions of the courts since the beginning of our jurisprudence. By reference to the plain terms of the statute, the hope of benefit or fear of injury must be induced by another, and that which is conceived in the mind of the accused to be best for himself will not exclude from evidence the confession thereby induced. See *Bohanan* v. *State,* 92 *Ga.* 28, 32 (18 S. E. 302); *Hecox* v. *State,* 105 *Ga.* 625 (31 S. E. 592). While the test laid down in our code is a rigid one, it must not be interpreted without regard to the fundamental principles and primary considerations impelling it. As a particle in the great ocean of law, it is to be considered in connection with the currents and tides of that ocean, and as modified and controlled thereby.

In 1 Greenleaf on Evidence (16th ed.), 354, § 219*a*, it is declared that "The foundation of all rules upon this subject rests upon an anxiety to exclude confessions that are probably not true; and therefore to exclude those that are not voluntary because such are probably untrue." In the language of Chief Justice Shaw in Commonwealth *v.* Morey, 1 Gray, 462, "The ground on which confessions made by a party accused, under promises of favor or threats of injury, are excluded as incompetent is not because any wrong is done to the accused in using them, but because he may be induced, by the pressure of hope or fear, to admit facts unfavorable to him, without regard to their truth, in order to obtain the promised relief or avoid the threatened danger; and therefore admissions so obtained have no just and legitimate tendency to prove the facts admitted." In 2 Wharton on Criminal Evidence (10th ed.), 1291, § 622*g*, it is said: "Under the fundamental principle of exclusion, namely, that the only confession that can be excluded is the false confession, it is clear that a true confession can not be excluded, even where it is admittedly brought forth by torture. The difficulty, however, is in determining that the confession so made is actually the true confession, or the truth that it is sought to establish. Hence the rule that, if a confession is involuntary, it is false, courts generally preferring to contravene the funda-

mental principle of excluding only false confessions by substituting a general rule of exclusion, based entirely upon the voluntary or involuntary character of the confession, holding that the involuntary character renders it untrustworthy." Professor Wigmore, in his work on Evidence (vol. 1, § 822), says: "The principle upon which a confession is treated as sometimes inadmissible is that under certain conditions it becomes untrustworthy as testimony. The principle is the same as that upon which statements based on memoranda, or testimony given while intoxicated, or testimony given upon suggestion of a leading question, are treated as dubitable and may under circumstances be excluded. In criminal charges, the higher degree of caution always exercised by the law in favor of the accused prompts to a greater strictness in excluding suspicious testimony, and the degree of likelihood of its incorrectness need be much less than in other instances; yet the principle is the same." He then proceeds to say that the primary and essentially correct test, in passing upon the admissibility of confession evidence, is this: "Was the inducement sufficient, by possibility, to elicit an untrue acknowledgment of guilt?" The secondary considerations—was the confession induced by a threat or a promise, by fear or hope, or was the confession voluntary—are but aids in application of the principal test. In 1 Bishop's New Criminal Procedure, § 1221 et seq., the underlying principle upon which confession evidence is excluded is recognized. Keeping in view the true reason upon which confession evidence is excluded, and the test by which the courts have sought to determine whether or not the truthfulness of the confession is sufficiently evidenced to admit the evidence thereof to the jury, it is clear that a confession should not be excluded because made under spiritual exhortation, or promise of secrecy, or promise of collateral benefit, since these means, or none of them, have the slightest tendency in a proper sense to induce one to confess falsely. Material facts discovered by a confession may yet be considered, although the confession itself be rejected because improperly obtained. The true reason for the admission of such facts is that the facts themselves, discovered in consequence of the confession improperly obtained, sufficiently evidence the truth of so much of the confession as to authorize its consideration by the jury. It is true that such facts are material and relevant, irrespective of the

confession, but, at least, in so far as·they may have a tendency to connect the person accused with the commission of the offense, they depend upon the principle first announced. See, in this connection, *Daniels* v. *State,* 78 *Ga.* 98 (3), 104 (6 Am. St. R. 238), especially the opinion by Justice Hall.

Coming, then, to a consideration of the inducement in the present case, let us see how the evidence of the confession and the instruction given the jury by the court stand upon general authority. In 1 Greenleaf on Evidence (16th ed.), § 220, it is said: "On principle, the advice by any person 'You had better tell the truth,' or its equivalent, can not possibly vitiate the confession, since it does not tend to produce a false statement; and to this effect is the modern weight of authority." It is different, as noted by this author, if the advice or suggestion is to "tell it," or "you had better tell," or "it will be better for you to tell," because, under such circumstances, the inducement offered to the party accused is to benefit himself by a confession, regardless of its truth or falsity. In 2 Wharton's Criminal Evidence (10th ed.); § 647, it is said: "A mere adjuration to speak the truth does not vitiate a confession where neither threats nor promises are implied." In 1 Wigmore on Evidence, § 832, it is said: "On principle, the advice by any person whatever that it would be better to tell *the truth* can not possibly vitiate the confession, since by hypothesis the worst that it can evoke is the truth, and there is thus no risk of accepting a false confession. The confessor is not obliged to choose between silence and a false confession having powerful advantages; the advantages are attached to the utterance of the truth; and, however tempting we may suppose them to be, there is nothing in the nature of the temptation to make the statement untrustworthy; for if it has availed at all, it has availed to bring out the truth." Telling a prisoner that it will be better for him to tell the truth can hardly, by any process of right reasoning, be interpreted as an invitation to him to make an untrue confession. Advice to tell the truth ought not to be interpreted as an invitation to tell a lie. 1 Bishop's New Criminal Procedure, § 1227, is as follows: "Since the danger that the confession will be false is the ground for excluding it, an exhortation, re-enforced or not by a motive, to tell the truth, does not render inadmissible what is said in response; unless the meaning is that the real thing sought is a confession,

the speaker assuming the truth to be guilt." This statement of the doctrine by Bishop seems to us in a comprehensive way to cover the ground. It must be admitted that words, as such, may be pregnant with meaning, or practically colorless, according to the circumstances under which they are uttered. Indeed, a confession may be the direct result of either hope or fear, to be kept from the jury upon every principle of reason and justice, where no words whatever are used to the accused. Words which may, under some circumstances, induce hope or fear may, in other circumstances, be entirely void of such meaning. In any case, if the inducement was sufficient by possibility to elicit an untrue confession of guilt, then the evidence thereof, on reason and principle, ought to be excluded. The advice given the prisoner in the case of *Green* v. *State,* supra, was, "If you know anything, tell it, and it may be best for you." As was said by Lumpkin, J., in the opinion in that case: "The real object of the conversation had with the prisoner was to obtain confessions of guilt, rather than to ascertain the truth, whatever it might be." The circumstances under which the confession was made in the case of *Dixon* v. *State,* supra, do not appear. In *Smith* v. *State,* supra, the accused inquired of an employee of the prosecutor what he should do, and was advised that the best thing to do was to give a plea of guilty, if he was guilty, and that it would be lighter on him. The court was of the opinion that this statement, under all the circumstances of the case, rendered the truthfulness of the confession so doubtful as to make its admission improper. It is to be noted that the statement is in the form of a direct inducement to plead guilty.

In the case at bar the evidence of the officer to whom the confession was made is as follows: "I advised him to tell the truth, that is true,—told him it would be better to tell the truth about it." It appears from the evidence that this particular officer and others expressly cautioned the accused that nothing could be promised him, and treated him with proper consideration. All of the evidence is to the effect that the confession was purely voluntary, unless that of the witness Waggoner quoted above is sufficient to make the confession involuntary. The defendant, in his statement at the trial, contended otherwise, but this is beside the question. We think that under the facts in this record the advice that it would be better to tell the truth about the case did not, as

a matter of law, vitiate the confession. Not only was the written confession concerning which the officer Waggoner testified offered in evidence upon the trial, but another employee of the electric company, himself under indictment, testified to facts directly implicating this defendant, and to direct confessions made by him before he was arrested. Moreover, it was shown that the accused appeared before the grand jury of Fulton county in a certain cause there being investigated and under oath testified to his guilt of the offense for which he was tried, and later, upon the trial of the case of the State v. Pollard, in Fulton superior court, again testified to his guilt of that offense.

If the confession was properly admitted, it was not error for the court to so instruct the jury. The assignment of error on the charge of the court is that the court did not correctly state the law. There is no exception to this instruction upon the ground that it tended to impress upon the jury the duty of considering the alleged confession, even if they should find that it was not freely and voluntarily made. Confession evidence should be rigidly restricted in the interest of justice. Our code prescribes a very rigid test, and we do not wish to be understood as holding that the just, wise, and salutary restrictions placed upon the admission of confession evidence should be in any wise relaxed. But in the absence of any other circumstance calculated to produce in the mind of one the slightest hope of benefit or remotest fear of injury, the mere statement to him that it is best to tell the truth about the case ought not to take away from the jury the evidence of a confession then made, since, by possibility, the circumstances considered, such advice does not tend to cause a false or untrue confession of guilt.

5. The jury were the judges of the facts of this case. The facts, if believed by the jury, required the verdict rendered. Judicial interference with the discretion of the trial judge in overruling the motion for a new trial is not in this case authorized.

*Judgment affirmed. Wade, C. J., and Luke, J., concur.*