### 13611. KING v. THE STATE.

LUKE, J. The evidence abundantly authorized the defendant's conviction. The foundation for the admission of the defendant's confession was properly laid, and it was not error to admit, over defendant's objection, the alleged confession of the defendant.

The charge of the court, when read in its entirety, was full and fair, and

gave to the defendant the benefit of every legal contention raised by him.

A careful examination of each and every assignment of error in this case shows no legal reason why the verdict of the jury should be set aside. The defendant has had a legal trial. It was proper to overrule his motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*

DECIDED JULY 11, 1922.

Indictment for arson; from Fulton superior court — Judge Humphries. April 19, 1922.

Application for certiorari was denied by the Supreme Court.

King was charged with having set fire to and burned his dwelling house at No. 25 Fortress Avenue in the City of Atlanta on April 2, 1921. On the trial the State introduced in evidence an affidavit obtained from him at Tifton, Ga., on May 4, 1921, by the prosecutor, J. Albert Sharp, State fire-inspector, in which he said that on March 1, 1921, he took out fire insurance on the house and on his household goods; that shortly before the fire he was notified by his employers that he would be laid off, and that, being without any means of making a living when he was laid off, he made up his mind to set fire to the house and obtain the insurance; that on April 1, 1921, at night, he moved from the house a refrigerator, a bureau, a washstand, a mattress, four pillows, an " arch square " and rug, and took them to 127 Marietta street and stored them there in the name of H. Hansell; that on the morning of April 2 his wife left the house and went to Tifton, carrying trunks etc.; and that before she left he had her to buy a gallon of kerosene, which he used in destroying the property; that in the afternoon of that day he placed in a closet, among some papers and waste, which he saturated with kerosene, a candle, after having tested it to· burn two hours and a half, and lighted the·candle at 7 o'clock and arranged it to burn until 9:30; that after he lit the candle he " came on to town " with a friend named Mack Ingram, and remained down town until after the fire was out. The affidavit concluded as follows: " I make this statement freely and voluntarily, of my own will and accord, and the same has not been induced by the slightest fear of punishment or remotest hope of reward, but is entirely voluntarily made on my part, with full knowledge of all of its contents." Various details of this statement were corroborated by witnesses for the

State. The defendant made no statement at the trial, but introduced witnesses to establish his insanity.

Testimony of Sharp as to the defendant's confession was objected to on the ground that the confession "was not freely and voluntarily obtained and without any hope of reward or the remotest fear of injury;" and the motion for a new trial complains of the admission of this testimony and the refusal of the court to rule out the alleged confession. Sharp testified that he obtained the confession "after grilling [the accused] about three hours on this fire;" but that it was freely and voluntarily made, and was not induced by fear of punishment or by any reward or hope of reward; that, among other things, he said to the accused: "If you know anything about the fire, it's best for you to come on and tell the truth and not try to lie out of it, because we have got the evidence to show what the stuff is and what is done;" that he told the accused, "as a general rule of courts, a man plead guilty, don't put the courts to trouble, they generally make it a little bit lighter, but I didn't have anything to do with that; that's up to the court." The witness continued as follows: "About two hours after that we just about quit talking, he just walked up and I told him, 'The best thing now is to come on, tell the truth and come ahead and let us know how this thing started.' He walked up then with tears in his eyes and says, 'Gentlemen, this fire was a little bit crooked,' and that's the first word he said; and I said, 'Come on now and tell us why it was crooked and how it was.' Then he opened up and told us. . . That was after talking with him about three hours; he was denying his guilt of part of it; some of it he would admit, . . stuff that he moved from there, some of it he would admit. . . I certainly did tell him that if he knew anything it would be best that he tell it and tell the truth about it." The witness testified as to a confession substantially the same as the written one mentioned above, and that the latter was signed afterwards. From his testimony it appears that on his return to Atlanta the witness found, at the place at which the accused said they were stored, various articles of furniture and household goods mentioned above which the accused had said were removed from the house just before the fire. It was testified also that the trunks taken from the defendant's house to Tifton contained certain articles which the accused

48

"claimed in his proof of loss." The court charged the jury, in the terms of the code, as to when confessions should be disregarded.

As to admissibility of the confession, counsel for the plaintiff in error cited: Penal Code (1910), § 1032; 125 *Ga.* 252; 113 *Ga.* 1039; 88 *Ga.* 516, 518; 68 *Ga.* 661. Cited contra: 94 *Ga.* 1; 19 *Ga. App.* 759-65; 124 *Ga.* 86; 21 *Ga.* 227; Penal Code (1910), § 1034; 135 *Ga.* 357 (3). See 10 *Ga. App.* 109 (3), 112-14.

*T. J. Lewis,* for plaintiff in error.

*John A. Boykin, solicitor-general, E. A. Stephens,* contra.