## UNITED STATES v. KLEE.

### No. C—7587.

### April 29, 1943.

District Court, E. D. Washington, N. D.

Edward M. Connelly, U. S. Atty., of Spokane, Wash., for plaintiff.

Frank Weaver, of Spokane, Wash., for defendant.

SCHWELLENBACH, District Judge.

The question before the Court is the admissibility of testimony in the nature of a confession which the Government proposes to offer, and to which objection is made upon the basis of a recent decision of the Supreme Court in the case of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. ——.

As suggested in that decision, I have, in the absence of the Jury, heard the preliminary testimony leading up to the proposed introduction of the confession. Briefly, the facts are these, as developed in that preliminary hearing, and with the addition of certain testimony submitted yesterday in the presence of the jury.

On February 24th this defendant sold to a man by the name of Churchill two articles. Mr. Churchill became suspicious and notified some authority, he didn't say whom. As the result of that a representative of a Division of the Spokane Air Depot, whose work is devoted to investigation, went out to Mr. Churchill's place of business and secured from him the two articles which it is alleged were stolen, that is, a Federal Indicator, and a Vernier Caliper. On the 25th of February he notified the Federal Bureau of Investigation and the case was assigned to the witness now on the stand, Mr. Smith, an agent for the Federal Bureau of Investigation. Mr. Smith went, that afternoon, to the main office of the Spokane Air Depot, and at about 4 o'clock in the afternoon contacted the defendant in the vicinity of the air depot. He requested the defendant to proceed with him to the office of the Federal Bureau of Investigation in the Federal Building here in Spokane. The defendant did proceed with him. No formal arrest was made. The testimony is that in response to two or three questions propounded by Mr. Smith to the defendant he admitted he had stolen the articles which he had sold the day before to Mr. Churchill, and which are involved in this indictment, from the Spokane Air Depot. Some preliminary conversation occurred which resulted some fifteen or twenty minutes later in the writing out of the so-called confession which the Government now proposes to introduce.

There is no evidence here or claim upon the part of the defendant that there was any violence either physical or mental. There is no claim that any inducements were held out to him, or threats made. Immediately upon the signing of the confession, which was signed by the defendant after having been warned that he didn't need to sign it, and that if it was signed it might be used in this Court, Mr. Smith proceeded to the office of the United States Attorney and then went back to the defendant and told him he had secured authority for a warrant for his arrest, and he was to go with him to the United States Commissioner. Within a period of not more than two hours after Mr. Smith first contacted the defendant he was taken before the United States Commissioner, was arraigned and entered a plea of guilty, and shortly thereafter was released on bond.

It should be noted that this happened before the decision in the McNabb case was rendered. I say this in order to negative any impression that the speed attained was inspired by that opinion and in order to make apparent that what was done could not be characterized as an effort to do mere lip service to the requirement of that decision.

The sole question involved in the objection which the defendant has made to the introduction of the so-called confession is whether it is admissible in the light of the McNabb decision. There is not even the slightest hint that the confession was other than voluntary when viewed by the standards outlined in any decision prior to the McNabb case. There was nothing done which runs afoul of any rule previously conceived as necessary for the protection of those suspected of crime.

I will not stop to discuss the question as to whether defendant was under arrest at the time this statement was taken. For the purpose of this ruling I will assume that even the courteous invitation of the F.B.I. agent to defendant was tantamount to an arrest so far as defendant's mental processes were concerned.

The first essential to an understanding of the McNabb decision is a realization of the care which the Supreme Court used in pointing out that it was deciding that case upon a basis other than the constitutional question urged by the petitioners in that case. The issue made up

by the parties were these—I am quoting (McNabb v. United States, supra, 318 U.S. at pages 338, 339, 63 S.Ct. at page 612, 87 L.Ed. ——):

"Relying upon the guarantees of the Fifth Amendment that no person 'shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property without due process of law', the petitioners contend that the Constitution itself forbade the use of this evidence against them. The Government counters by urging that the Constitution proscribes only 'involuntary' confessions, and that judged by apppropriate criteria of 'voluntariness' the petitioners' admissions were voluntary and hence admissible."

Then the Supreme Court goes on to say (318 U.S. at pages 339, 340, 63 S.Ct. at page 612, 87 L.Ed. ——): "It is true, as the petitioners assert, that a conviction in the federal courts, the foundation of which is evidence obtained in disregard of liberties deemed fundamental by the Constitution, cannot stand. * * * And this Court has, on Constitutional grounds, set aside convictions, both in the federal and state courts, which were based upon confessions 'secured by protracted and repeated questioning of ignorant and untutored persons, in whose minds the power of officers was greatly magnified' ".

And it cites a number of recent decisions bottomed on Constitutional grounds, Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682, going down to Ward v. Texas, 316 U.S. 547, 62 S.Ct. 1139, 86 L.Ed. 1663. But the court says (318 U.S. at pages 340, 341, 63 S.Ct. at page 613, 87 L.Ed. ——):

"In the view we take of the case, however, it becomes unnecessary to reach the Constitutional issue pressed upon us. For, while the power of this Court to undo convictions in state courts is limited to the enforcement of those 'fundamental principles of liberty and justice' * * * which are secured by the Fourteenth Amendment, the scope of our reviewing power over convictions brought here from the federal courts is not confined to ascertainment of Constitutional validity. * * * Quite apart from the Constitution, therefore, we are constrained to hold that the evidence elicited from the petitioners in the circumstances disclosed here must be excluded."

"The principles governing the admissibility of evidence in federal criminal trials have not been restricted, therefore, to those derived solely from the Constitution. In the exercise of its supervisory authority over the administration of criminal justice in the federal courts * * *, this Court has, from the very beginning of its history, formulated rules of evidence to be applied in federal criminal prosecutions." (318 U.S. at page 341, 63 S.Ct. at page 613, 87 L.Ed. ——)

So it is apparent that this decision was not based upon constitutional grounds. In it the Supreme Court proceeds to set up a rule of evidence. It is important to outline this distinction because of the difference between the constitutional rules and the rules of evidence. It is a recognition by the Supreme Court that the two are not necessarily identical. The difference in the treatment of the question boils down to this: when one seeks to exclude a confession upon the basis of the rules of evidence, the basis of this effort is that a confession secured under certain circumstances is untrustworthy. What the Courts have sought to do in excluding confessions under evidentiary rules is an attempt to exclude confessions which were untrue because of the fact that they were untrue, and because of the feeling on the part of the Court the methods used in securing them tend toward the conclusion that they were untrue and that, therefore, they were not trustworthy.

In his Third Edition, Mr. Wigmore says this (Wigmore on Evidence, Art. 822): "The principle upon which a confession is treated as sometimes inadmissible is that *under certain conditions it becomes untrustworthy as testimony.*

In this section he sets forth quotations from a number of opinions written between 1776 and 1922. I have chosen one of them written in 1917 by Judge George of the Georgia Court of Appeals, the case of Wilson v. State, 19 Ga.App. 759, 92 S.E. 309, 312. Wigmore on Evidence, Art. 822. I choose it, not only because it is a clear statement of the problem, but, also, because of the fact, like every other person who has had intimate association with Walter George, I developed in six years a profound respect for his innate sense of justice.

He said this: "Practically all the authorities agree that the only proper ques-

tion is whether the inducement held out to the prisoner tended to make his confession an untrue one. The exclusion of confession evidence rests on the connection with the inducement; the inducement and the confession stand to each other in the relation of cause and effect. The object of every legal investigation is to ascertain the truth. Testimonial worthlessness is the underlying and fundamental principle on which confession evidence is, under certain circumstances, rejected. If the court could know in a given case that a confession was true, it is clear that the evidence thereof should not be rejected. The wrong done, however reprehensible, in inducing the accused to make a confession, could never, rightly considered, require a rejection of the confession if the court could know as a fact that the confession was the truth of the case. The underlying principle is that the only confession that can be excluded is the false confession."

That states the reason behind the evidentiary rules for the exclusion of confessions.

When a confession is excluded on constitutional grounds the Court need not be interested in whether or not a confession is true or false. If the confession has been secured in violation of the constitutional prohibition against self-crimination it makes no difference whether it is true or false. If the confession is to be rejected because its admission would do violence to the due process of law requirement, it, likewise, makes no difference whether it is true or false. A confession may set forth facts which are true, but the circumstances under which it was secured may result in the use of that confession infecting the whole proceedings at the trial with such unfairness that the defendant may be prevented from having what is called his "day in court". It is important that the Supreme Court has definitely drawn the line in this McNabb case and excluded it, because the Supreme Court has not always done so, and it makes possible now to consider what Mr. Wigmore said at the conclusion of section 823 in his Third Edition, as follows (footnote 5):

"That the two rules should be supposed to have something of a common principle or spirit is a not unnatural error. But that history should be rashly tampered

with by asserting any common origin is inexcusable. The following passage by reason of its exalted source must be specially repudiated: 1897, White J. in Bram v. United States, 168 U.S. 532, 42 L.Ed. 568: 'In criminal trials in the courts of the United States, wherever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the Fifth Amendment to the Constitution of the United States commanding that no person "shall be compelled in any criminal case to be a witness against himself." * * * A brief consideration of the reasons which gave rise to the adoption of the Fifth Amendment, of the wrongs which it was intended to prevent, and of the safeguards which it was its purpose unalterably to secure, will make it clear that the generic language of the amendment was but a crystallization of the doctrine as to confessions, well settled when the amendment was adopted.' "

Mr. Wigmore goes on to say: "Of this it must suffice to say that no assertions could be more unfounded. The history of the two rules * * * shows that there never was any historical connection or association between the constitutional clause and the confession-doctrine."

The Supreme Court had certainly excluded from its consideration in this case the question of constitutional provisions. It then becomes proper for us to consider the language in this opinion in the light of the evidentiary rules. We are dealing with an addition to the rules of evidence. In its opinion the court points out three sections of the Statute, one referring to arrest by United States marshal, 18 U.S.C.A. § 595, another referring to the Federal Bureau of Investigation, 5 U.S.C.A. § 300a, which reads (318 U.S. at page 342, 63 S.Ct. at page 614, 87 L.Ed. ——): " * * * the person arrested shall be immediately taken before a committing officer."

It also asks comparison with the Act in reference to arrest of persons in the act of operating an illicit distillery. 18 U.S.C.A. § 593.

At this point I wish to detour for a moment to discuss the word, "immediately." While I fully realize that a decision of a District Court carries but little weight in an effort to interpret an opinion of the Supreme Court of the

United States, nonetheless there is an interesting discussion of this word in a recent opinion in the case of United States v. Bell, D.C., 48 F.Supp. 986, 994. There Judge Yankwich, of California, refers to the same Statute. He says this: "The word 'immediately', as used in § 300a does not mean an hour or fifteen minutes, or any other definite period of time. Courts have always held that when a duty is imposed to do an act 'forthwith' or 'immediately', the test is: Was it done within a time reasonable, under the particular circumstances?"

In the footnote at the bottom of the page are given many citations in support of that statement. One from Anderson v. Goff, 72 Cal. 65, 73, 13 P. 73, 76, 1 Am.St.Rep. 34: "Like the term 'immediately,' it is not in law to be necessarily construed as a time immediately succeeding, without an interval, but an effectual and lawful time, allowing all the 'adjuncts and accomplements' necessary to give an act full legal effect to be performed."

The defendant contends that the Supreme Court in its McNabb decision has promulgated an absolute rule by which every confession, regardless of its truth or falsity, regardless of the circumstances under which it was secured, regardless of its voluntary nature, must be excluded unless, prior to the time it was given, a defendant has been arraigned before a committing magistrate. He urges that an arraignment is a sine qua non. The Government's position is that by the McNabb decision the Supreme Court simply added to the criteria by which the voluntary or involuntary nature of a confession is to be judged an additional yard stick to assist the court in its process of measuring. The Government argues that any other appraisal of the McNabb decision would make of it an unworkable barrier to the reasonable administration of criminal justice. In effect, the Government urges me to heed the admonition of Mr. Justice Holmes in Bain Peanut Co. v. Pinson, 282 U.S. 499, 501, 51 S.Ct. 228, 229, 75 L.Ed. 482, where he said: "We must remember that the machinery of government would not work if it were not allowed a little play in its joints."

After careful study of the McNabb opinion I have concluded that the Government's position is correct for the following reasons:

The first reason is, if the Supreme Court had wanted to make it an absolute requirement to the admissibility of the confession that the man be taken before the Commissioner before any statement be taken from him it could have said so, so easily. It didn't say so.

The second reason is, the language which the court used in discussing the three statutes, I quote (318 U.S. at pages 343, 344, 63 S.Ct. at page 614, 87 L.Ed. ——): "The purpose of this impressively pervasive requirement of criminal procedure [that is, the immediate taking before the Commissioner] is plain. * * * The police must with reasonable promptness show legal cause for detaining arrested persons, * * *."

Why does the court say that should be done? Because it wants to have a procedure which naturally guards against the misuse of the law enforcement process. It wants to provide safeguards "against the dangers of the overzealous as well as the despotic." It says it wants to "assure protection for the innocent and secure conviction of the guilty by methods that commend themselves to a progressive and self-confident society." The Supreme Court said it wants to check "resort to those reprehensible practices known as the 'third degree'." It said it wants to "avoid all the evil implications of secret interrogations of persons accused of crime"; to outlaw "easy but self-defeating ways in which brutality is substituted for brains". These are the Supreme Court's objectives in adding this rule in the consideration of the admissibility of confessions. Since these are the objectives sought by the Court I cannot believe that it intended to exclude a confession in a case where admittedly all of these objectives have been attained despite the fact that the confession was secured before the time of the arraignment.

The third reason that causes me to feel that the court did not consider this as an absolute rule is the repetition by the Court of the criticism of what was done in the McNabb case. In the opinion, the Court refers to the "plain disregard of the duty enjoined by Congress." It refers to the fact that two of these men were arrested in the middle of the night and put in a barren cell and kept there for fourteen hours, and that for two days they were subjected to unremitting questioning by

numerous officers; that Benjamin's confession was secured by detaining him unlawfully and questioning him continuously for five or six hours; that the McNabbs had to submit to all this without the aid or benefit of counsel. It refers to it as a "flagrant disregard of the procedure"; they call it a "wilful disobedience of the law." It says that Congress has *not explicitly forbidden the use of evidence* so procured, but further on says "that evidence that has been obtained in such violation of legal rights as this case discloses", and in the last paragraph it says that "a decent regard for the duty of courts as agencies of justice and custodians of liberty forbids that men should be convicted upon evidence secured under the circumstances revealed here." Surely the Court would not have reiterated and reemphasized these flagrant violations of all principles of decent conduct had it intended that, from the day of the McNabb decision, the absence of such violations would be unimportant if the confession was obtained prior to arraignment.

The fourth reason why I believe the Court was not setting this up as an absolute rule is its reference to the case of *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307. In the Nardone case the Court points out that it is the duty of the trial court to hold a preliminary hearing, such as I am having here, and in the opinion in that case, which, also, was written by Mr. Justice Frankfurter, we find this language (308 U.S. at page 340, 60 S.Ct. at page 267, 84 L.Ed. 307):

"Any claim for the exclusion of evidence logically relevant in criminal prosecutions is heavily handicapped. It must be justified by an over-riding public policy expressed in the Constitution or the law of the land. In a problem such as that before us now, two opposing concerns must be harmonized: on the one hand, the stern enforcement of the criminal law; on the other, protection of that realm of privacy left free by Constitution and laws but capable of infringement either through zeal or design. In accommodating both these concerns, meaning must be given to what Congress has written, even if not in explicit language, so as to effectuate the policy which Congress has formulated."

Then, in the McNabb case, he quotes from the Nardone case and uses this language (318 U.S. at page 346, 63 S.Ct. at page 616, 87 L.Ed. ——). "The civilized conduct of criminal trials cannot be confined within mechanical rules. It necessarily demands the authority of limited direction entrusted to the judge presiding in federal trials, including a well-established range of judicial discretion, subject to appropriate review on appeal in ruling upon preliminary questions of fact. Such a system as ours must, within the limits here indicated, rely on the learning, good sense, fairness and courage of federal trial judges."

Why would he have said that if he intended this to be an absolute rule? There would be no necessity for a preliminary hearing such as I have held here in any case where the confession was secured before arraignment. There would be just one question "when was this taken, before or after the man was taken over before the United States Commissioner?" There would be no necessity to have any learning, good sense or fairness or courage to answer that question.

The Court must purposefully have included the quotation from the Nardone case. It must have meant when it used the language "The civilized conduct of criminal trials cannot be confined within mechanical rules" that it was the duty of the trial judge in passing upon the admissibility of the confession to determine whether or not a confession was secured under circumstances which would or would not detract from its trustworthiness. I can see no other explanation for the insertion of the quotation from the Nardone case that it was suggesting the Supreme Court did not think it was laying down a mechanical rule or creating a situation of rigidity.

The last reason why I think the Court did not intend to set up an absolute rule is its inclusion of certain statements about what it was not doing. The Court said this (318 U.S. at pages 346, 347, 63 S.Ct. at page 615, 87 L.Ed. ——): "The mere fact that a confession was made while in the custody of the police does not render it inadmissible. (citing four cases) * * * we confine ourselves to our limited function as the court of ultimate review of the standards formulated and applied by federal courts in the trial of criminal cases. * * * We hold only that a decent regard for the duty of courts as agencies of justice and custodians of

liberty forbids that men should be convicted upon evidence secured under the circumstances revealed here. * * * The history of liberty has largely been the history of observance of procedural safeguards. And the effective administration of criminal justice hardly requires disregard of fair procedures imposed by law."

From these reasons, I have reached the conclusion that the Supreme Court in the McNabb case added to the various tests to be taken into consideration by the trial judge a new one, that of whether or not a man was promptly taken before the United States Commissioner.

There have been two other instances in which, in recent cases, the Supreme Court has referred to the matter of prompt arraignment—once in an opinion by Justice Black in Chambers v. Florida, 309 U.S. 227, 240, 60 S.Ct. 472, 84 L.Ed. 716, when he refers in a footnote to the Report of the Commission on Lawless Enforcement of the Law (American Bar Association). Another is in Ward v. Texas, 316 U.S. 547, 62 S.Ct. 1139, 1142, 86 L.Ed. 1663, an opinion by Mr. Justice Byrnes in which he points out that the Texas Statutes require that persons accused be taken "immediately before a magistrate." He says "instead of taking petitioner to the nearest magistrate they took him away from the nearest magistrate." Both of these cases were decided upon constitutional grounds, and in neither of them did the Court do anything more than refer briefly to the violation of the Statute.

█ Whether confessions are to be admitted or not admitted depends upon whether or not they are trustworthy. A Court should desire to get at the truth. A confession secured by force or physical violence or mental violence probably may not be true. If the officer holds out inducements, promises, a person might be induced to give a false confession. If an officer gets the defendant intoxicated or injects a serum into him and thereby reduces his mental capacity it's a good chance those are not true. I am compelled to the conclusion that by adding this additional safeguard the Supreme Court has said it believes it will be a further aid in securing true confessions rather than false confessions. There has been great confusion in the opinions going back over several hundred years as to the attitude of courts toward confessions. The attitude of the courts has changed apparently as the methods used by investigation officers have changed. When the courts have let down, the investigating officers have proceeded to get more zealous and then reach a point of overzealousness. Then the Courts have gone back to a less friendly attitude toward confessions. There is an interesting statement concerning confessions by Mr. Wigmore in Section 851 in the Third Edition, which I quote:

"In the first place, an innocent person is always helped by an early opportunity to tell his whole story; hundreds of suspected persons every day are set free because their story thus told bears the marks of truth. Moreover, and more important, every guilty person is almost always ready and desirous to confess, as soon as he is detected and arrested. This psychological truth, well known to all criminal trial judges, seems to be ignored by some Supreme Courts. The nervous pressure of guilt is enormous; the load of the deed done is heavy; the fear of the detection fills the consciousness; and when detection comes, the pressure is relieved; and the deep sense of relief makes confession a satisfaction. At that moment he will tell all, and tell it truly. To forbid soliciting him, to seek to prevent this relief, is to fly in the face of human nature. It is natural, and should be lawful to take his confession at that moment—the best one."

I cannot overlook the fact that the right to freedom from false arrest is just about as cherished a right as the right of freedom from the use of confessions improperly secured. If Federal investigating officers are to be compelled to take everyone against whom they have the slightest suspicion before a United States Commissioner, and to file a complaint charging the individual with crime, charging him with violating a federal statute before being permitted to talk to him, I can foresee widespread injury. I cannot believe the Supreme Court ever so intended.

Such a result would be inconsistent with the sympathetic solicitude for individual rights which the Supreme Court so frequently has evidenced in its recent decisions. It would also run counter to the realistic approach of the Court toward all of these problems involving fundamental rights of the people. For example, Mr.

Justice Frankfurter, who wrote the opinion in the McNabb case, also spoke for the Court in the case of Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. ——. In that opinion he said this (317 U.S. at page 279, 63 S.Ct. at page 242, 87 L.Ed. ——):

"Putting this thought in more generalized form, the procedural safeguards of the Bill of Rights are not to be treated as mechanical rigidities. What were contrived as protections for the accused should not be turned into fetters."

In the case of Glasser v. United States, 315 U.S. 60, 89, 62 S.Ct. 457, 473, 86 L.Ed. 680, in his dissent on behalf of the Chief Justice and himself, Mr. Justice Frankfurter said this: "The guarantees of the Bill of Rights are not abstractions. Whether their safeguards of liberty and dignity have been infringed in a particular case depends upon the particular circumstances."

Of great importance in passing on defendant's position is the language of the Supreme Court in Lisenba v. California, 314 U.S. 219, 239, 62 S.Ct. 280, 291, 86 L.Ed. 166. There what was done was, in my opinion, more coercive than in the McNabb case. Yet Mr. Justice Roberts, speaking for the Court, said: "Does the questioning on May 2nd, in and of itself, or in the light of his earlier experience, render the use of the confessions a violation of due process? If we are so to hold, it must be on the ground that such a practice, *irrespective of the result upon the petitioner,* so tainted his statements that, without considering other facts disclosed by the evidence, and without giving weight to accredited findings below that his statements were free and voluntary, as a matter of law, they were inadmissible in his trial. This would be to impose upon the state courts a stricter rule than we have enforced in federal trials." (Emphasis added.)

The purpose of the Supreme Court in the McNabb case is plain. Every lover of liberty has delighted in the forthright determination of that court to safeguard and protect the rights of the individual against any overzealous oppression by his Government. In its effort to strengthen its hand it has simply decided to make use of a new and additional weapon. By so doing it does not intend to visit injustice upon thousands of innocent persons whose reputations would be tarnished by the investigating officers who might be seeking to ferret out the guilty. Such a result would be inevitable under defendant's interpretation of the McNabb decision. I cannot believe the Supreme Court so intended. To so hold would cause the courts to indulge in what Mr. Justice Frankfurter, in his dissent in United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 414, 87 L.Ed. ——, characterized as "playing Lady Bountiful to criminals" at the expense of the innocent.

The objection is overruled and the exhibit admitted in evidence.