## UNITED STATES v. GROTE.
### No. 103.

Circuit Court of Appeals, Second Circuit.

Feb. 3, 1944.

William W. Pellet, of New York City, for Frank Heinrich Wilhelm Grote, defendant-appellant.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for plaintiff-appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendant Grote was convicted and sentenced to imprisonment for fifteen years for conspiring with his co-defendant Grohs and others to violate Section 32, 50 U.S.C. A., which provides as follows:

"Whoever, with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign nation, communicates, delivers, or transmits, or attempts to, or aids or induces another to, communicate, deliver, or transmit, to any foreign government, or to any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States, or to any representative, officer, agent, employee, subject, or citizen thereof,

either directly or indirectly, any document, writing, code book, signal book, sketch, photograph, photographic negative, blue print, plan, map, model, note, instrument, appliance, or information relating to the national defense, shall be punished by imprisonment for not more than twenty years."

Section 34 of the above Title 50 provides that if two or more persons conspire to violate the provisions of Section 32 and one or more of such persons does any act to effect the object of the conspiracy, each shall be punished as provided in Section 32.

We think that the judgment of conviction from which Grote has appealed was justified on the law and the facts and should be affirmed.

Grote was a naturalized German citizen, as was also his friend Grohs, who pleaded guilty to the charge. Grote had been a mechanic and a photographer. He had a studio of his own for photography until October, 1941. He worked in it at night and also worked as a mechanic for Norden & Company by day.

Grote took the stand at the trial and testified that Grohs brought him certain drawings of a heating device, which a friend of Grohs' had invented, to eliminate ice from airplanes. There was also testimony that a mechanic named Nipken, employed by the Air Associates which were engaged in defense work, delivered drawings from the files of Air Associates to one Reuper, who in turn gave them to Grohs who had them photographed by Grote at the latter's studio. Grote testified that Grohs told him that the photographs would be sent to the Patent Office in Washington and also to the German Patent Office in Berlin. The drawings of the airplane device, as well as others from the file of Air Associates, were photographed by Grote and delivered to Grohs. Grote testified that he did not know the photographs were taken for any unlawful purpose. But it was amply shown both by the oral testimony and by two written statements which he signed, after questioning by FBI Agents Rice and McKinney, that he was actually engaged in an unlawful conspiracy to aid the German government to the injury of the United States. It is not disputed that the government succeeded in establishing the existence of such a conspiracy as was alleged in the indictment. The only error seriously claimed is that the two statements signed by Grote were admitted in evidence contrary, as is said, to the decisions of the Supreme Court in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, and Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599.

Under the charge of the court the jury found that these statements by Grote were made voluntarily and he admitted that no physical force and no threats were used in obtaining them. Prior to signing the statements Grote had executed written waivers, reciting his willingness to "remain under the continuous physical supervision of the Special Agents of the Federal Bureau of Investigation, * * * without immediate arraignment", and that such a supervision was a step "necessary for my protection" and that "my consent to this arrangement is * * * freely given * * * without fear of threat or promise of reward." Each waiver also recited that it was "a true and exact representation of my voluntary decision in the matter." He had been asked to go to the FBI office for examination on January 16, 1943, which he did voluntarily, and was there interrogated on January 16, 17 and 18 in regard to his connection with the furnishing of the photographs and signed a statement which in some details he corrected after it was typewritten. He left the headquarters and returned home on January 18, but was asked to return on January 20, and was further interrogated and signed a second waiver and supplemental statement on that day in which he also made certain corrections after it was typewritten. He testified that some of the statements in the supplemental document were not correct and that he signed it because he was told to.

There can be no doubt that when Grote undertook in 1941 to furnish photographs of an apparatus to de-ice airplanes and knew that they were to be forwarded to Germany, that there was evidence from which a jury could conclude that he was a knowing participant in a conspiracy to furnish information that was "to be used to the injury of the United States". Even though we had not then declared war with Germany, the European war had been going on for nearly two years, we had begun to arm and the impropriety of furnishing patented devices for airplanes to the German government was obvious. The facts pointed far more strongly to guilt than to such an incredible stupidity as might make

an innocent intent possible. To Grote's second typewritten statement made on January 20, 1943, he appended the following in his own handwriting: "It is shameful what I have done, but I have never realized what I was doing and did not do it with intention. For what I have done I'm willing to pay, and if there is any hope for me, to be able to make good for what I have done I would be very grateful."

The typewritten statements signed by Grote did no more than somewhat amplify what he testified to at the trial and there was plenty of proof of guilt without them. But in any event at the time he made the statements he was not under arrest, and the agents were conducting an investigation to discover whether he was a participant in the conspiracy, and he was hoping by furnishing information at their request to avoid indictment and disgrace. We know of no controlling decision which renders these voluntary examinations illegal. If such examinations prior to arrest may not be had, government agents will be precluded from conducting reasonable investigations, and many persons, who by submitting to examination may show themselves to be innocent and under the existing practice wholly escape, will be compelled in the future to suffer arrest and indictment.

The McNabb and Anderson decisions which we have referred to are not in point. The defendants there when questioned were under arrest. One of them was stripped of his clothes and all of them were interrogated under circumstances which indicated intimidating duress. The decisions turned upon the failure of the arresting officers immediately to take them before a committing officer as required by 18 U.S.C.A. § 595 and 5 U.S.C.A. § 300a. While Grote was kept under supervision it was by his consent and he never claimed that there was any harsh or threatening treatment. It is true that in United States v. Haupt, 136 F.2d 661, the Court of Appeals of the Seventh Circuit reluctantly held that a submission to supervision under a waiver in form like the present was insufficient to take the case out of the doctrine of the McNabb and Anderson decisions, but with all deference we are inclined to think the result reached in United States v. Haupt was not called for by the decisions of the Supreme Court. Here each confession was voluntary and neither was in violation of the statutes re-

quiring the defendant to be taken before a magistrate. The defendant chose to remain for examination in order to take the chance of explaining his conduct and avoiding trouble. It seems clear that at the time the first statement was made Grote was not legally under arrest for, when it was concluded, he was allowed to go home. On January 20, when he returned for further examination at the request of the government agents, it is reasonable to say that his action was impelled by prudence and hope rather than compulsion. Under the. circumstances disclosed we do not believe that there was any arrest until after both examinations were concluded and only after he was actually apprehended on January 20 did the statutes requiring Grote to be taken before a magistrate apply.

 In our opinion the judgment should be affirmed because the confessions were made voluntarily when the defendant was not under arrest and were, therefore, properly admitted in evidence.

Judgment affirmed.