No. 36,088

THE STATE OF KANSAS, *Appellee*, v. HOLBERT SMITH, *Appellant.*

(149 P. 2d 600)

June 10, 1944. Opinion filed

*Thomas C. Forbes,* of Eureka, and *T. R. Evans,* of Chanute, were on the briefs for the appellant.

*A. B. Mitchell,* attorney general, *William P. Timmerman,* assistant attorney general, and *Robert N. Allen,* county attorney, were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: The defendant was charged with the crime of receiving stolen personal property, namely, automobile tires of a value in excess of $20. He was convicted of that offense and appeals.

The two questions presented for appellate review are whether the trial court (1) had jurisdiction to try the defendant for the crime charged in Neosho county, or (2) erred in admitting the evidence of a police officer, who testified relative to certain statements made to him by the defendant regarding his possession of a part of the stolen property.

Preliminary to consideration of the issues, it will be helpful to relate the incidents leading up to the transaction which resulted in the arrest of the defendant.

On the evening of the 31st day of July, 1943, one Albert Washington, a colored boy about eighteen years of age, purloined twelve automobile tires of the actual value of between $18 and $20 each from a garage in the city of Iola. He then loaded his loot in a borrowed automobile and proceeded to the city of Chanute where he sold two tires to an unknown individual. Shortly after midnight he picked up another colored boy about his age, an acquaintance named Allen, and the two of them went to the home of the defendant. Washington, who seemed to be unacquainted with the defendant, remained in the car in front of the house while Allen went in to talk to him. The witnesses were not in accord on the subject, but it appears that after Allen had induced the father of the defendant to arouse him from sleep the latter got out of bed and went out to the car where a conversation took place between him and Washington regarding the sale and disposal of the ten tires. At any rate, thereafter, Washington and Allen left the defendant's home and proceeded to a point west of the Chanute airport, the exact location of which will be more fully described presently. They stopped at this point and after waiting a few minutes the defendant drove up behind them. The tires were then transferred to defendant's automobile. Shortly thereafter Washington and the defendant, in the latter's car, proceeded to a farmhouse which is conceded to have been located in Wilson county where seven of the tires were disposed of for the sum of $62. After the sale the two then drove back to the Smith home where the three remaining

tires were left in the defendant's possession and later found by the officers of Neosho county.

The defendant was arrested on August 1, 1943, and lodged in the Chanute city jail where he was held for two or three days and then removed to the county jail at Erie. No complaint was filed against him until August 4, 1943, when he was charged with the crime of receiving stolen property.

Now that the facts leading up to the arrest of defendant have been established and about which there is no serious controversy, we direct our attention to controverted evidence, material to disposition of the issues here involved.

At the trial Washington, who had been convicted and sentenced for the part he had played in the tire transaction and was then serving his sentence in the Kansas State Industrial Reformatory at Hutchinson, was called as a witness. He was the only witness for the state on the question of locus of the offense, and testified the transfer of the tires from his automobile to the one driven by the defendant took place one and one-half blocks west of the stretch of the blacktop highway beginning at the northwest corner of the Chanute airport. It was admitted by counsel for defendant in open court that this point would be within the limits of Neosho county. On this specific question the defense produced two witnesses, Allen and the defendant himself, each of whom stated the transfer took place farther west on the highway out of Chanute and at a point which would have been located in Wilson county. In addition, in an attempt to weaken the testimony given by Washington, who prior to his conviction and sentence to the reformatory had testified at defendant's preliminary examination, the defendant produced a transcript of the evidence given by this witness on that occasion which contained a statement that the transfer of tires was not made in Neosho county. However, so far as this statement is concerned, it should be stated that Washington, who was interrogated regarding it on cross-examination, denied any recollection of having given any such answer.

Notwithstanding the sharp conflict in the evidence with respect to the place of the transfer and delivery of the tires, and the apparent discrepancy in the testimony of Washington at the preliminary and at the trial on that question, the jury when the case was submitted to it for determination found the defendant guilty of receiving stolen tires in Neosho county.

Appellant points out the conflict in the evidence heretofore referred to, and, while frankly recognizing the doctrine that questions of fact supported by competent evidence will not be disturbed on appellate review when they have been passed upon by a jury, contends that under the circumstances of this case the rule should not be applied. He insists the trial court committed error in refusing to sustain his motion for a directed verdict of not guilty based upon the ground that the state had failed to prove or produce evidence establishing venue in Neosho county. The proposition advanced by appellant is interesting even though it cannot be upheld. There was definite, specific and competent testimony on the part of the witness Washington as to where the transfer of the tires was made, and the jury as the trier of the facts had a right to accept his statement as true notwithstanding it was refuted by the testimony of other witnesses.

This court has long been committed to the rule it is the function of the jury, not that of the court of appellate review, to weigh the evidence or pass upon the credibility of witnesses, and that where there is any substantial competent evidence to support it a verdict will not be disturbed on the ground of insufficiency of the evidence. (*State v. Morrison,* 115 Kan. 200, 222 Pac. 87; *State v. Wood,* 145 Kan. 730, 67 P. 2d 544; *State v. Edwards,* 151 Kan. 365, 99 P. 2d 836; *State v. Klein,* 154 Kan. 165, 117 P. 2d 575; *State v. Thomas,* 155 Kan. 374, 125 P. 2d 375, and *State v. Dodd,* 156 Kan. 52, 131 P. 2d 725.) Measured by the rule just announced, it must be conceded, in fact it cannot be denied, there was competent evidence from which the jury—after observing the conduct and demeanor of the witnesses who testified as to the locus of the offense—could quite properly determine the crime with which the appellant was charged was committed in Neosho county, even though its conclusion might not be in accord with evidence given by the greater number of witnesses on that question. Under such circumstances the rule cannot be disregarded. When applied, it is apparent the trial court committed no error in overruling the motion for a directed verdict or in holding it had jurisdiction to try the appellant for the crime charged and sentence him for its commission.

One other question remains for our consideration. During the trial A. R. Blunk was called as a witness for the state and in the course of his examination stated the appellant had sent for him on August 2, 1943, and that he had had a conversation with him at that

time.' Counsel for the state next asked the witness this question, "What did he tell you?" The appellant immediately objected to any testimony on the part of this witness with respect to conversations had with him or the repetition of any statements he might have made to him on the ground it was apparent the conversation inquired about took place prior to the time he was brought before a magistrate, and that any statements or admissions made by him prior to that time or prior to the time he had been given an opportunity to consult with counsel, irrespective of whether they were voluntary or involuntary, were inadmissible. The trial court overruled the objection and the witness made answer to the question propounded to him as follows:

"A. He said he wanted to come clean on this thing. I bought some tires and I have got them out at my house and told us where he had the tires hid; said they were out in the garden, back of the garage, along the line fence."

With respect to the evidence just referred to, it should be noted that at the moment the conversation described occurred the appellant had not been formally charged with the offense of receiving stolen property. Neither was he being held in jail under a warrant, nor had he been brought before an examining magistrate, or given the opportunity to furnish bond for his release from custody. In fact, the record disclosed no formal complaint was filed against him until August 4, 1943.

At no time during the trial, either prior to or after the making of the objection to this testimony, was there any suggestion of claim on the part of appellant that statements made by him to witness Blunk were not freely made or that threats, duress or other improper means were responsible for his making them. Therefore under our decisions, as is frankly conceded by counsel for appellant, this evidence was properly admitted. (See *State v. Hayes*, 106 Kan. 253, 187 Pac. 675; *State v. Dilgar*, 111 Kan. 794, 208 Pac. 620; *State v. Duvall*, 140 Kan. 456, 36 P. 2d 958 and *State v. Criger*, 151 Kan. 176, 183, 98 P. 2d 133.)

Notwithstanding the rule announced in our decisions appellant directs our attention to the following federal cases: *McNabb v. United States*, 318 U. S. 332-349; 87 L. Ed. 819; *Anderson v. United States*, 318 U. S. 350-357, 87 L. Ed. 829; *United States v. Haupt*, 136 F. 2d 661, and *United States v. Hoffman*, 137 F. 2d 416. He candidly admits his objection to the evidence complained of is based on the doctrine announced therein, to the effect that in prosecutions

in the federal courts and under the federal statutes even voluntary statements made by a defendant after arrest and before arraignment are not admissible against him. Without attempting to go into detail as to the reasoning behind the rule of evidence announced in the opinions in the preceding cases, it should be stated that our examination of them convinces us the construction placed upon them by appellant is entirely justifiable, if in fact it is not entirely correct. However, there is a later decision, not referred to by appellant, which in our opinion modifies the principle announced in those cases and almost entirely destroys the effectiveness of appellant's argument, even were we disposed—which we are not—to adopt in prosecutions instituted in our courts under our statute, rules of evidence promulgated by the federal courts in the course of the determination of a prosecution instituted under the federal statutes. The case we refer to is United States v. Mitchell, 322 U. S. 65, 88 L. Ed. (Adv. S.) 812, 64 S. Ct. 896, decided by the Supreme Court of the United States on April 24, 1944. The factual situation involved was not dissimilar to that of the case at bar. The defendant Mitchell was arrested on Monday evening and taken by police officers to the police station. Shortly after he arrived he admitted his guilt, told the officers about various items of stolen property to be found in his home and consented to their going there to recover the property.

With respect to questions raised by appellant's contention we quote from the opinion of the foregoing case written by Mr. Justice Frankfurter, who it should be noted was also the author of the opinion in McNabb v. United States, supra, cited by appellant. In distinguishing the McNabb case it was stated:

"In the circumstances of the McNabb case we found such an appropriate situation, in that the defendants were illegally detained under aggravating circumstances: one of them was subjected to unremitting questioning by half a dozen police officers for five or six hours and the other two for two days. We held that 'a conviction resting on evidence secured through such a flagrant disregard of the procedure which Congress has commanded cannot be allowed to stand without making the courts themselves accomplices in willful disobedience of law. Congress has not explicitly forbidden the use of evidence so procured . . .' . . . Inexcusable detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for many hours under psychological pressure, were the decisive features in the McNabb case which led us to rule that a conviction on such evidence could not stand." (88 L. Ed. Adv. S. 813.)

In dealing with the rule of evidence applicable on appeals to the Supreme Court from courts of last resort of the various states, it was said:

"We are dealing with the admissibility of evidence in criminal trials in the federal courts. Review by this Court of state convictions presents a very different situation, confined as it is within very narrow limits. Our sole authority is to ascertain whether that which a state court permitted violated the basic safeguards of the Fourteenth Amendment. Therefore, in cases coming from the state courts in matters of this sort, we are concerned solely with determining whether a confession is the result of torture, physical or psychological, and not the offspring of reasoned choice." (p. 814.)

And in further distinguishing the McNabb case in reaching its conclusion in the one then under consideration the court held:

"But the foundations for application of the McNabb doctrine are here totally lacking. Unlike the situation in other countries, see, for instance, ¶¶ 25 and 26 of the Indian Evidence Act, 1872, under the prevailing American criminal procedure, as was pointed out in the McNabb case, 'The mere fact that a confession was made while in the custody of the police does not render it inadmissible.' 318 U. S. at 346. Under the circumstances of this case, the trial courts were quite right in admitting, for the juries' judgment, the testimony relating to Mitchell's oral confessions as well as the property recovered as a result of his consent to a search of his home. As the issues come before us the facts are not in dispute and are quickly told." (p. 814.)

See, also, the opinion, likewise the dissenting opinion, in the later case of *Ashcraft et al. v. State of Tennessee,* 322 U. S. 143; 64 S. Ct. 921, decided May 1, 1944, in which, although the court found a confession made by one of the defendants in the action was obtained by coercion and therefore admitted in violation of such defendant's constitutional rights, the rule announced in *United States v. Mitchell,* supra, is nevertheless recognized and it is apparent that if such confession had been voluntarily obtained the propriety of its admission in evidence would have been conceded.

Summarizing, as heretofore indicated, we do not believe there is now any great diversity in the evidentiary rules applicable to the competency of confessions or admissions against interest in criminal prosecutions in federal and state courts. Even so, we adhere to our decisions holding they are admissible if freely made, without inducement or duress or brought about by some other improper means.

What we have heretofore said disposes of all contentions advanced by appellant in support of his position that he should be granted a new trial. Since it appears no error was committed by the trial court its judgment should be and is hereby affirmed.